# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 18, 2014 Session

## DUCKWORTH PATHOLOGY GROUP, INC., A PROFESSIONAL ASSOCIATION v. THE REGIONAL MEDCIAL CENTER AT MEMPHIS (THE MED)

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-10-1922      Walter L. Evans, Chancellor

### No. W2012-02607-COA-R3-CV - Filed April 17, 2014

A surgical pathology group filed this action in chancery court, claiming that the Med violated its own rules and acted arbitrarily and capriciously by failing to award the petitioner with a contract after a lengthy request for proposals process. The petition stated that the chancery court had subject matter jurisdiction over the matter pursuant to the statutes governing petitions for certiorari. The trial court granted the Med's motion to dismiss for numerous reasons, including lack of jurisdiction. We find that the petition was not subject to dismissal for lack of subject matter jurisdiction, and we reverse the trial court's finding to the contrary. However, due to the petitioner's failure to appeal the trial court's alternative grounds for dismissal, we find it unnecessary to consider the issues raised on appeal, and we otherwise affirm the order of dismissal.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Affirmed in Part and Reversed in Part**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Odell Horton, Jr., Kacey L. Faughnan, Ahsaki E. Baptist, Memphis, Tennessee, for the appellant, Duckworth Pathology Group, Inc.

Saul C. Belz, Michael D. Tauer, Memphis, Tennessee, for the appellee, Shelby County Healthcare Corp., d/b/a The Regional Medical Center at Memphis

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

The Regional Medical Center at Memphis ("the Med") is a not-for-profit public benefit organization that provides healthcare services to individuals in and around the greater Memphis area. On January 29, 2009, the Med sent a surgical pathology "Request for Proposals" ("RFP") letter to potential bidders, as the Med was in need of an organization to provide surgical pathology services to its patients. Duckworth Pathology Group, Inc. ("Duckworth") was one of three organizations that responded to the RFP process. The Med's vendor selection committee ultimately chose a different provider, Mosaic Prime, LLC, Mosaic Pathology Consultants, PLLC, and Mosaic GI-Hepatic Pathology Services, PLLC (collectively, "Mosaic"), and it entered into a contract with Mosaic on or about February 15, 2010.

On August 4, 2010, Duckworth sent a letter to the Med, stating that it was "protesting the Pathology Services bid process and bid award." Duckworth contended that the bid process and bid award "were biased and unfair and potentially violated The Med's policies and other rules, regulations, and/or laws." Duckworth requested additional documents and information about the bidding process, pursuant to the Open Records Act, which the Med provided. Based upon the information Duckworth learned from those documents, Duckworth sent another letter to the Med, further detailing its objections to the selection process. On September 24, 2010, the Med sent a letter to Duckworth stating that it appreciated Duckworth's concerns, but that it was the Med's position that its vendor selection committee had made its decision "after careful and unbiased consideration" using "reliable and accurate" information. In addition, the Med's letter stated that its bid procedures, to the extent that it chooses to utilize a request for proposal process, are not governed by state statute and constitute nothing more than a request for offers to perform services. Duckworth considered this letter to be a denial of its "bid protest."

On October 21, 2010, Duckworth filed, in chancery court, an "Appeal of Administrative Decision of the Regional Medical Center at Memphis (The Med) Denying Bid Protest." The complaint was twenty pages long and over 150 paragraphs, but basically, Duckworth alleged that the Med's selection process and deliberations were based upon false and misleading information and were completed in an arbitrary and capricious manner. Duckworth asked the chancery court to review the Med's actions and to require the Med to comply with its RFP process and either award the surgical pathology contract to Duckworth, or require the Med to rebid its surgical pathology contract to qualified bidders. The "Jurisdiction and Venue" section of Duckworth's pleading, in Paragraph Nine stated, "This Court has subject matter jurisdiction over this matter pursuant to Tenn. Code Ann. §§

29-9-101 and 29-9-102 in the exercise of its right to review the decisions of boards or commissions." The cited statutes actually apply to contempt proceedings. In apparent recognition of this fact, Duckworth filed an "Amended Appeal of Administrative Decision of the Regional Medical Center at Memphis (The Med) Denying Bid Protest" on December 9, 2010, amending the aforementioned paragraph regarding the basis of the chancery court's jurisdiction to state: "This Court has subject matter jurisdiction over this matter pursuant to Tenn. Code Ann. §§ 27-9-101 and 27-9-102 in the exercise of its right to review the decisions of boards or commissions." Tennessee Code Annotated sections 27-9-101 and -102 govern petitions for certiorari.[1]

The Med filed a motion to dismiss for failure to state a claim, basically arguing that Duckworth had no basis for challenging its contracting decisions because there was no contractual relationship between the Med and Duckworth. In response, Duckworth argued that it had "stated a claim for judicial review" because, according to Duckworth, the Med is a governmental entity that must comply with competitive bidding standards. Thus, Duckworth contended that the Med had "mischaracterize[d] Duckworth's appeal of a governmental entity's administrative decision as a contract action," when Duckworth "did not file a contract action against The Med" but instead "filed an appeal of The Med's administrative decision denying Duckworth's Bid Protest[.]"

At the hearing on the Med's motion to dismiss, the Med orally moved for dismissal of the case for lack of subject matter jurisdiction. The Med pointed out that a petition for writ of certiorari must be verified and must state that the petition is the first application for the writ. *See* Tenn. Code Ann. § 27-8-106. Neither the original "Appeal" nor the "Amended Appeal" filed by Duckworth satisfied these requirements, despite citing the certiorari statutes as the basis of the trial court's jurisdiction. Accordingly, the trial judge orally ruled that the case would be dismissed for lack of subject matter jurisdiction.

---

[1] Specifically, the statutes provide:

§ 27-9-101. Applicability
Anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts, where not otherwise specifically provided, in the manner provided by this chapter.

§ 27-9-102. Petitions
Such party shall, within sixty (60) days from the entry of the order or judgment, file a petition of certiorari in the chancery court of any county in which any one (1) or more of the petitioners, or any one (1) or more of the material defendants reside, or have their principal office, stating briefly the issues involved in the cause, the substance of the order or judgment complained of, of the respects in which the petitioner claims the order or judgment is erroneous, and praying for an accordant review.

A few days later, before a written order of dismissal was entered, Duckworth filed a motion to reconsider the trial court's oral ruling. Duckworth then argued that a petition for writ of certiorari was not the "exclusive" remedy for its claims, or even a "proper" remedy in this case. Duckworth asserted that it "was never required to file a writ of certiorari to obtain relief against The Med," and therefore, "Duckworth cannot be required to comply with statutory requirements for a form of relief that it was never required to file." Duckworth claimed that a losing bidder in a competitive bidding process is allowed to file a lawsuit "for declaratory or equitable relief" according to *Metropolitan Air Research Testing Authority, Inc. v. Metropolitan Government of Nashville and Davidson County*, 842 S.W.2d 611 (Tenn. Ct. App. 1992). In sum, Duckworth argued, "Since Duckworth was not required to file a writ of certiorari against The Med, Duckworth's Amended Appeal cannot be properly dismissed for any failure to comply with the statutory requirements for a writ of certiorari."

In response to the motion to reconsider, the Med asserted that it was irrelevant whether a petition for writ of certiorari was Duckworth's exclusive or proper remedy, because the petition for writ of certiorari was the avenue of relief Duckworth chose to pursue, and its complaint specifically invoked the chancery court's jurisdiction pursuant to the certiorari statutes.

Following a hearing, the trial court entered an order granting Duckworth's motion to reconsider. The court "retract[ed] its ruling of dismissal for lack of subject matter jurisdiction" and stated that it would "reserve a ruling on the issue and allow Duckworth to file a second amended petition addressing any alleged deficiencies." The court stated that it would reset the Med's pending motion to dismiss for consideration after Duckworth filed its second amended petition.[2]

Duckworth then filed a "Second Amended Appeal of Administrative Decision of the Regional Medical Center and Memphis (The Med) Denying Bid Protest and Requesting Equitable Relief." In the Second Amended Appeal, Duckworth amended Paragraph Nine of the "Jurisdiction and Venue" section to omit any reference to the certiorari statutes, stating instead that the chancery court had subject matter jurisdiction over this matter pursuant to Tennessee Code Annotated section 16-11-103 and *Metropolitan Air*, 842 S.W.2d 611.[3] According to Duckworth, "The only real change to the Complaint was a deletion of the

---

[2] The Med filed a motion seeking permission to seek an interlocutory appeal, which the trial court denied. The Med then sought permission from this Court to seek an extraordinary appeal, and it sought permission to appeal from the Tennessee Supreme Court as well. These requests were likewise denied.

[3] Tennessee Code Annotated section 16-11-103 states, "The chancery court has exclusive original jurisdiction of all cases of an equitable nature, where the debt or demand exceeds fifty dollars ($50.00), unless otherwise provided by this code. . . ."

mistaken reference to Tenn. Code Ann. §§ 27-9-101 and 27-9-102 in Paragraph 9 of the original Complaint. The allegations, the substance, and the relief requested in the Complaint remain[ed] unchanged."

The Med then filed another motion to dismiss, formally renewing its argument that the trial court lacked subject matter jurisdiction over the case due to the allegedly incurable defects in the original petitions filed by Duckworth. The Med asserted that the trial court's order allowing Duckworth to file yet another amended petition was "a nullity." The Med also asserted that Duckworth's petition should be dismissed for several other reasons, including violation of Tennessee Rule of Civil Procedure 8.05 for failure to specifically refer to the statute the Med allegedly violated; failure to join an indispensable party, i.e., Mosaic; failure to state that the petition was the first application for extraordinary relief pursuant to Tennessee Code Annotated section 29-1-107; failure to state a claim because the Med is not a governmental entity subject to competitive bidding requirements; and failure to state a claim because Tennessee Code Annotated section 12-4-106 (2011) provided that competitive bidding is prohibited for contracts for services by professional persons. Following another hearing, the trial court entered an order granting the Med's motion to dismiss, "[f]or all of the reasons set forth in the transcript of th[e] Court's oral ruling," which was attached to the order of dismissal and incorporated by reference. According to the attached transcript, the trial judge announced at the beginning of its oral ruling, "The Court has a lot of problems with this litigation. First of all, . . . the Court is just not satisfied that it has the jurisdiction to hear this matter." The court went on to discuss several other issues raised in the Med's motion to dismiss, stating, "And I'm not sure of the legal basis upon which Duckworth is seeking relief, as [counsel for Duckworth] indicated that this is not a low bid complaint, and that not all the necessary parties are before the Court." The court also stated that the Med's request for proposals was merely an invitation to make an offer, and the court was "not satisfied that there exists authority that would require The Med to adhere strictly" to the request for proposals. The court stated, "as [counsel for the Med] indicated, usually there will be some kind of statutory authority that would exist that a party can rely upon for purposes of determining whether the procedure that was followed was proper according to the legal rules and procedures established. But there has been no statute identified that the Court can rely on to conclude that what the Regional Medical Center did or didn't do violated some constitutional or procedural right of Duckworth." The court added, "there has been no satisfactory proof suggested that can be shown that the process that The Med used was unfair." In addition, the court stated that in the absence of a contract between the Med and Duckworth, "the Court has a problem with seeing that Duckworth has a cause of action for which relief can be granted." Finally, the court found that a previous decision of the Court of Appeals had held that the Med is not a governmental entity. Thus, the trial judge concluded by stating that the motion to dismiss was granted "for all those reasons." Duckworth timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, Duckworth presents the following issues, slightly restated, for review:

1.      Whether the chancery court erred in holding that the Med is not a governmental entity; and
2.      Whether Duckworth has standing to bring a cause of action against the Med for failure to adhere to the requirements of its own request for proposals and for failure to complete the selection process in a fair and principled manner.

In its posture as appellee, the Med raises the following additional issues, again slightly restated:

3.      Whether the chancery court lacked subject matter jurisdiction over Duckworth's claims due to the defects in the original petitions for certiorari;
4.      Whether this Court should address the arguments advanced on appeal by Duckworth when Duckworth failed to challenge alternative, independent grounds upon which the chancery court dismissed the petition;
5.      Assuming that Duckworth has not waived its right to challenge the other independent grounds for dismissal, whether dismissal was appropriate for those reasons.

For the following reasons, we find that the trial court did have subject matter jurisdiction to proceed with hearing Duckworth's petition, and we reverse in part the order of dismissal, to the extent that it holds otherwise. However, the order of dismissal is otherwise affirmed.

## III. DISCUSSION

### A.   *Subject Matter Jurisdiction*

We must begin by considering the issue of subject matter jurisdiction. This is so because if we determine that the trial court lacked subject matter jurisdiction, we "must vacate the judgment and dismiss the case without reaching the merits of the appeal." ***Johnson v. Metro. Gov't for Nashville Davidson County***, 54 S.W.3d 772, 774 (Tenn. Ct. App. 2001) (citing *Dishmon v. Shelby State Cmty. College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999)). The existence or non-existence of subject matter jurisdiction is a question of law, which we review de novo with no presumption of correctness. ***Stewart v. Schofield***, 368 S.W.3d 457, 462 (Tenn. 2012); ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000).

As previously noted, the "Amended Appeal" filed by Duckworth stated that the chancery court had subject matter jurisdiction over Duckworth's claims pursuant to Tennessee Code Annotated sections 27-9-101 and -102 "in the exercise of its right to review the decisions of boards or commissions." "Chapter 9 of Title 27 of the Tennessee Code Annotated provides the procedure by which an aggrieved party may obtain judicial review of the decision of a board or commission." *Bd. of Professional Responsibility of Tenn. Sup. Ct. v. Cawood*, 330 S.W.3d 608, 608 (Tenn. 2010). "Its provisions have been applied to a wide variety of such bodies." *Anderson v. Metro. Dev. & Housing Agency*, No. M2012-01789-COA-R3-CV, 2013 WL 3941079, at *2 (Tenn. Ct. App. July 26, 2013) (citing *Watts v. Civil Service Bd. for Columbia*, 606 S.W.2d 274, 284 (Tenn. 1980); *Wheeler v. City of Memphis*, 685 S.W.2d 4 (Tenn. Ct. App. 1984); *Walker v. Metro. Bd. Of Parks And Recreation*, M2007–01701–COA–R3–CV, 2009 WL 5178435 (Tenn. Ct. App. Dec. 30, 2009)). In order to obtain judicial review, section 27-9-102 requires an aggrieved party to file a petition for certiorari in chancery court within sixty days from the entry of the challenged order or judgment. *Cawood*, 330 S.W.3d at 609.

The courts' power to issue writs of certiorari flows from Article VI, Section 10 of the Tennessee Constitution; accordingly, a petition for writ of certiorari must satisfy Article VI, Section 10's requirements in order to vest a court with subject matter jurisdiction in a certiorari proceeding. *Talley v. Bd. of Professional Responsibility*, 358 S.W.3d 185, 192 (Tenn. 2011). "Article VI, Section 10 requires petitions for a writ of certiorari to be 'supported by oath or affirmation.'" *Id.* The courts cannot waive this constitutional requirement; it is mandatory and jurisdictional, and subject matter jurisdiction cannot be conferred by waiver or consent. *Id.* Tennessee Code Annotated section 27-8-106 provides that

> The petition for certiorari may be sworn to before the clerk of the circuit court, the judge, any judge of the court of general sessions, or a notary public, and shall state that it is the first application for the writ.

Thus, in order for a petition for certiorari to be valid, the petitioner must verify the contents of the petition and swear to the contents of the petition under oath, typically by utilizing a notary public. *Jackson v. Tenn. Dep't of Corr.*, 240 S.W.3d 241, 245 (Tenn. Ct. App. 2006) (citing *Wilson v. Tenn. Dep't of Corr.*, No. W2005-00910-COA-R3-CV, 2006 WL 325933, at *3-4 (Tenn. Ct. App. Feb. 13, 2006)). A verified complaint typically has an attached affidavit of the plaintiff to the effect that the complaint is true. *Id.* (citing *Wilson*, 2006 WL 325933, at *4).

"In civil cases, failure to comply with the verification requirement deprives the court of subject matter jurisdiction."[4]  *Stewart*, 368 S.W.3d at 466 n.18; *see also* *Cawood*, 330 S.W.3d at 609 ("a court lacks subject matter jurisdiction over a statutory petition for certiorari that is not supported by oath or affirmation."); *Blair v. Tenn. Bd. of Probation & Parole*, 246 S.W.3d 38, 41 (Tenn. Ct. App. 2007) ("Neither the trial court nor the appellate court acquires jurisdiction over the petition unless it is verified[.]")

Here, it is undisputed that neither the Appeal nor the Amended Appeal filed by Duckworth complied with the aforementioned requirements, as they did not contain a verification under oath.  Upon considering the Med's oral motion to dismiss for lack of subject matter jurisdiction, the trial court orally dismissed the petition, but it later granted Duckworth's motion to reconsider, stating that it was "retract[ing] its ruling of dismissal for lack of subject matter jurisdiction" and that it would "reserve a ruling on the issue" upon the filing of a second amended complaint by Duckworth.  The Med basically contends that this was error because the defects in the original pleadings were incurable.

If Duckworth was *required* to bring a petition for writ of certiorari, as its exclusive remedy, in order to challenge the Med's request for proposals process, then we would readily agree with the Med's contention that the trial court lacked the authority to allow Duckworth to file an amended petition seeking to cure the deficiencies in its original petition.[5]  However,

---

[4] Conversely, a petition for certiorari that lacks "the requisite recitation [that it is the first application for the writ], although deficient, does not defeat subject matter jurisdiction." *Stewart*, 368 S.W.3d at 466 n.18 (citing *Talley*, 358 S.W.3d at 192-93).  This is because the recitation requirement is not found in the Tennessee Constitution. *Talley*, 358 S.W.3d at 192.  The recitation requirement is therefore waivable. *Id.*

[5] In *Blair*, 246 S.W.3d at 41, for example, a petitioner filed a motion to amend his petition for certiorari seeking to submit an amended petition that complied with the verification requirement discussed above.  However, the motion to amend was filed more than sixty days after the date of the judgment he was attempting to appeal.  The Court explained that a trial court has subject matter jurisdiction to extend the sixty-day time period of section 27-9-102 only if the order granting the extension is entered within the sixty-day period.  After the sixty day period has expired, the trial court no longer has such jurisdiction.  Because the sixty-day time period had already expired in *Blair*, "the trial court had lost subject matter jurisdiction over Blair's petition and, therefore, was without authority to grant Blair's motion for an extension of time.  Consequently, the trial court erred in exercising jurisdiction over Blair's petition, and his petition should have been simply dismissed." *Id.*; *see also* *Graves v. Tenn. Dep't of Corr.*, No. M2011-00059-COA-R3-CV, 2011 WL 2976904, at *2 (Tenn. Ct. App. July 21, 2011) (stating that a petitioner's third petition for certiorari attempting to comply with the verification requirement was "dead on arrival" and properly dismissed for lack of subject matter jurisdiction when filed outside the sixty-day period); *Richardson v. Tenn. Bd of Probation & Parole*, No. M2008-02568-COA-R3-CV, 2009 WL 3046960, at *5-6 (Tenn. Ct. App. E.S. Sept. 23, 2009) (explaining that a petitioner could not confer subject matter jurisdiction on the trial court by filing an amended petition containing the necessary verification after the

(continued...)

Duckworth argues that it was not proper for it to have sought review pursuant to a petition for certiorari, and that the trial court should have simply overlooked its mistake and treated its petition as a complaint for equitable relief rather than an improperly filed petition for certiorari.

Although Duckworth does not cite it on appeal, we have considered Duckworth's argument in light of our Supreme Court's decision in *Fallin v. Knox County Board of Commissioners*, 656 S.W.2d 338 (Tenn. 1983). In *Fallin*, a petitioner filed a complaint "in the form of a petition for a writ of certiorari," but the prayer for relief asked the court to declare that a particular zoning resolution was null and void. *Id.* at 340. The Supreme Court noted that "in cases too numerous to cite," Tennessee courts had permitted judicial review of the validity of zoning ordinances and resolutions by means of the common law writ of certiorari. *Id.* at 341. The Court stated that this practice was "highly unusual" and "probably" incorrect, and the Court concluded that an action for declaratory judgment, rather than a petition for certiorari, was the proper remedy for one seeking to invalidate legislative action. *Id.* Nevertheless, the Court said, "where, as here, the plaintiff mistakenly employs the remedy of certiorari the court may treat the action as one for declaratory judgment and proceed accordingly, rather than dismiss the action."[6] *Id.* at 342.

In the case at bar, Duckworth basically asks this Court to take a similar approach – to ignore its allegedly "mistaken reference" to the certiorari statutes and to treat its original "Appeal" as a complaint for equitable relief rather than a petition for certiorari. Duckworth claims that it could have filed a complaint for equitable relief in order to challenge the Med's bidding procedure, rather than a petition for certiorari, according to *Metropolitan Air Research Testing Authority, Inc. v. Metropolitan Government of Nashville and Davidson County*, 842 S.W.2d 611 (Tenn. Ct. App. 1992). In that case, the City of Nashville requested

[5](...continued)
sixty-day period expired); *Terry v. Tenn. Dep't of Corr.*, No. W2008-01907-COA-R3-CV, 2009 WL 1138122, at *3 (Tenn. Ct. App. Apr. 28, 2009) (affirming dismissal for lack of subject matter jurisdiction where an attorney attempted to "re-file" a notarized version of the original petition for certiorari outside the sixty-day time period); *Clark v. Tenn. Bd. of Probation & Paroles*, No. M2006-01747-COAR3-CV, 2008 WL 269511, at *3 (Tenn. Ct. App. E.S. Jan. 30, 2008) (stating that the trial court "had no choice" but to deny the petitioner's motion to amend and dismiss his petition for certiorari when he sought to submit the required verification by affidavit some five months after the filing of the initial petition).

[6] The converse is also true – a complaint incorrectly designated as a complaint for declaratory judgment can be treated as a petition for certiorari. *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn. 1990). However, upon being treated as a petition for certiorari, the complaint is subject to dismissal for lack of subject matter jurisdiction if it was not filed within the sixty-day time period for filing such a petition. *See Campbell v. Bedford County Regional Planning Comn'n*, No. M2003-00025-COA-R3-CV, 2004 WL 626724, at *3-5 (Tenn. Ct. App. Mar. 29, 2004); *Johnson*, 54 S.W.3d at 774-75.

bids from prospective vendors for the City's vehicle inspection maintenance program. *Id.* at 613. The City ultimately awarded the contract to a new vendor, and the former vendor filed an action in chancery court, asking the court to set aside the new contract on the basis that the new vendor's bid did not meet the bid specifications. *Id.* The new vendor intervened and challenged the former vendor's standing to challenge the contract's compliance with the competitive bidding requirements. *Id.* at 614. On appeal, the Court noted that in the past, courts had generally held that unsuccessful bidders did not have standing to challenge the award of a public contract because they had no right to contract with the government. *Id.* at 616. However, the Court explained, "That view is now giving way to a growing number of decisions permitting *suits for declaratory or equitable relief* by prospective or disappointed bidders who have been aggrieved by a refusal to award a public contract to the lowest responsible qualified bidder." *Id.* (emphasis added). The Court ultimately concluded that the former vendor had a sufficiently distinct personal interest in the outcome of the dispute to give rise to standing to assert a claim. *Id.* at 618. Throughout the opinion, however, there was no mention of petitions for certiorari or whether such a petition would be an appropriate way of challenging the award of a public contract.

We had similarly held, in an earlier case, that a low bidder has standing to sue a governmental authority for its failure to comply with competitive bidding requirements. ***Browning-Ferris Industries of Tennessee, Inc. v. City of Oak Ridge***, 644 S.W.2d 400, 401-402 (Tenn. Ct. App. 1982). But again, the issue before the Court was limited to standing, and there was no discussion of subject matter jurisdiction or the possibility of proceeding via a petition for certiorari.

In a more recent case, the Court of Appeals specifically considered whether a dissatisfied bidder was required to challenge the award of a public contract via a petition for certiorari. In ***Anderson v. Metropolitan Development and Housing Agency***, No. M2012-01789-COA-R3-CV, 2013 WL 3941079, at *1 (Tenn. Ct. App. July 26, 2013) *perm. app. denied* (Tenn. Nov. 13, 2013), a painting contractor filed a complaint alleging that a city agency had violated its own rules by failing to choose him as the lowest bidder on a painting contract. Among other things, he asked the trial court to order the agency to follow its own bidding procedures and the applicable laws. The plaintiff's claims were based upon the city agency's handbook, which provided certain procedures for the procurement of contracts. The agency filed a motion to dismiss, arguing that "the only appropriate way" to contest its award of a contract was by a petition for certiorari, which must be filed within sixty days of the challenged decision. *Id.* at *1. In response, the painter argued that a petition for certiorari "was not the sole remedy available to a party suing a municipal body for failing to comply with bidding requirements." *Id.* The trial court dismissed the complaint upon concluding that a petition for certiorari *was* the sole method of protesting the city agency's award of a contract. *Id.* at *2. The Middle Section of this Court affirmed, holding that the

painter's failure to file a timely petition for certiorari deprived the trial court of jurisdiction.[7] *Id.* at *3. The Court explained its reasoning as follows:

> We note that the above statutes [providing for the filing of a petition for certiorari] refer to court review of an order or judgment, thus implying the existence of some sort of quasi-judicial procedure at the administrative level that the aggrieved party has recourse to before having to turn to the courts. Such a procedure makes it possible for the grievance to be resolved at a level closer to the events that gave rise to it, which is the preferable result, because
>
>> Courts are wary of unwarranted judicial intrusions into the performance of ordinary governmental activities ... Since procuring goods and services is a type of routine activity that is best left to governmental officials, most courts have recognized that public procurement authorities have wide discretion with regard to accepting bids or any of the other details of entering into a contract.
>
> *Metro. Gov. of Nashville*, 842 S.W.2d 611, 619 (Tenn. Ct. App. 1992).
>
> The procedure for review in this case is found in Section VII of the MDHA [city agency's] handbook, which is titled "Appeals and Remedies. It declares among other things, that "... any protest against an award of a solicitation must be received from an offeror within fifteen (15) calendar days of award (Board approval, execution of contract or Purchase Agreement), or the protest will not be considered." The handbook also describes a series of graduated steps the agency is required to follow to resolve such a protest once it is received, including the participation of the MDHA Executive Director.

*Id.* In sum, the Court concluded that Tennessee Code Annotated section 27-9-102, governing petitions for certiorari, "sets out the jurisdictional parameters of the court's power to adjudicate claims brought by parties aggrieved by the orders or judgments of public bodies," and the Court found that the painter's complaint simply fell outside those parameters. *Id.* at *5.

---

[7] The painter in ***Anderson*** cited ***Browning-Ferris*** and claimed that it supported his position that he had standing to file a lawsuit, as opposed to a petition for certiorari, to challenge the City's actions. *Id.* at *4. However, the Middle Section found that ***Browning-Ferris*** was not controlling because the opinion in that case only dealt with the issue of *standing*, and not the issue of subject matter jurisdiction. *Id.* The Court found no indication that the issue of subject matter jurisdiction was ever raised in ***Browning-Ferris***. *Id.*

Despite the many similarities between *Anderson* and the case at bar, we find that *Anderson* is not controlling as to the precise issue before us. In deciding that a petition for certiorari was the exclusive remedy for the aggrieved party before it, the *Anderson* Court specifically took note of the fact that the certiorari statutes "refer to court review of an order or judgment, thus implying the existence of some sort of quasi-judicial procedure at the administrative level that the aggrieved party has recourse to before having to turn to the courts." *Id.* at *3. In *Anderson*, that quasi-judicial procedure was spelled out in the "Appeals and Remedies" section of the agency's handbook, which set forth the process for an offeror to protest a contract award and described "a series of graduated steps the agency [was] required to follow to resolve such a protest once it is received[.]" In the case before us, however, the Med had no process for a rejected bidder to pursue an appeal. Duckworth simply wrote a letter to the Med notifying it of its objections to the selection process, and the Med responded with a letter stating that the Med disagreed with Duckworth's position. Thus, there was no hearing or proceeding "of some sort of quasi-judicial procedure" that could be reviewed, and no record of the evidence.[8] The provisions of the certiorari statutes "plainly presuppose that a judicial or quasi-judicial proceeding is the subject of review and that a 'record' of evidence, common in such proceedings, is available for certification to the reviewing court." *Fallin*, 656 S.W.2d at 341. "The application of pre-defined standards, the requirement of a hearing, and the requirement of a record are earmarks of quasi-judicial proceedings." *Brundage v. Cumberland County*, 357 S.W.3d 361, 370 (Tenn. 2011). Under the particular circumstances of this case, then, we find that it was inappropriate for Duckworth to challenge the Med's award of the contract at issue via a petition for writ of certiorari.

The question remains, however, as to whether the trial court could "overlook" the "mistaken" reference to the certiorari statutes in Duckworth's Appeal and treat the petition as one for equitable relief, in light of the fact that the original petition was not verified or sworn. In other words, we must determine whether the defects in the original petition rendered it "fatally flawed," as the Med contends, or whether the trial court could proceed to consider the petition as something other than one for certiorari despite the defects. We believe that this question was answered by our Supreme Court in *Brundage v. Cumberland County*, 357 S.W.3d 361, 363 (Tenn. 2011). In that case, county residents filed a petition for writ of certiorari seeking judicial review of the county's decision to approve construction of a landfill. The petition for certiorari was not verified, so the county moved to dismiss it for lack of subject matter jurisdiction. *Id.* at 364. After the sixty-day period had expired, the petitioners filed an amended petition that omitted any reference to a writ of certiorari but also

---

[8] In *Metropolitan Air*, 842 S.W.2d at 618, the decision to award the contract was made by the City's purchasing agent with the approval of the mayor. Perhaps this could explain the lack of any reference to a petition for certiorari.

-12-

included attached affidavits affirming the truth of the allegations in the petition. ***Id.*** Nevertheless, the trial court dismissed the petition, finding that it had "lost subject matter jurisdiction" when a verified petition was not filed within sixty days, and the Court of Appeals affirmed. ***Id.*** The Supreme Court reversed, holding that the lower courts had erred by not construing the residents' petition as a petition for declaratory judgment and thereby permitting the petition to proceed to a hearing.[9] ***Id.*** at 371. The Court stated,

> There is no question that petitions for a statutory writ of certiorari must satisfy the requirements of both Article VI, § 10 of the Tennessee Constitution and Tenn. Code Ann. § 27-8-106 (2000). There is likewise no question that the petition filed by the affected residents in this case within sixty days after the decision of the Cumberland County Commission did not comply with the constitutional and statutory requirement that it be supported by oath or affirmation. The residents' belated effort to cure this defect is to no avail. See *Crane Enamelware Co. v. Smith*, 168 Tenn. 203, 205-06, 76 S.W.2d 644, 644-45 (1934) (holding that an effort to cure the omission of a verification on the petition for writ of certiorari beyond the deadline for filing the writ was not permitted).
>
> However, the fact that the residents' petition did not satisfy the formal requirements for a writ of certiorari does not necessarily mean that the petition must be dismissed. In other land use planning cases, the courts have consistently been lenient with regard to their construction of the petition. For example, we have permitted an improperly filed petition for declaratory judgment to be treated as a petition for writ of certiorari, *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn. 1990), and conversely, we have allowed an improperly filed petition for writ of certiorari to be treated as a petition for declaratory judgment. *Fallin v. Knox Cnty. Bd. of Comm'rs*, 656 S.W.2d at 342.

***Id.*** at 371. Even though the residents' petition was styled as a petition for writ of certiorari, and defective because it was not supported by oath or affirmation, the Supreme Court concluded that the trial court and the Court of Appeals had erred in failing to treat the petition as one for declaratory judgment. ***Id.***

"Regardless of the name given to the original pleading, courts should look to the substance of the action." ***Moore & Assocs.***, 246 S.W.3d at 581 (citing *Johnson*, 54 S.W.3d

---

[9] The Court concluded that the particular decision at issue could be challenged either by a petition for writ of certiorari or by a petition for declaratory judgment. ***Id.*** at 370.

at 774).  The Appeal filed by Duckworth asked the trial court to require the Med to comply with the requirements of its request for proposals and either award the surgical pathology contract to Duckworth as the "least expensive, best qualified bidder," or require the Med to rebid its surgical pathology contract to qualified bidders.  The Appeal was not styled as a petition for certiorari, and it did not reference a hearing or request the transmittal of a record of evidence.  The Second Amended Appeal mirrored the previous Appeal and Amended Appeal, with the exception of the omission of the single reference to the statutes governing certiorari in Paragraph Nine, which was replaced with a citation to the statute concerning the chancery court's jurisdiction over equitable matters.  Based upon the Courts' reasoning in **Brundage**, and in **Metropolitan Air**, we conclude that the trial court should have treated the "Appeal" filed by Duckworth as a petition for equitable relief rather than an improperly filed petition for certiorari.[10]  Accordingly, the "Appeal" was not subject to dismissal for lack of subject matter jurisdiction despite its failure to comply with the formal requirements of a petition for certiorari.  The trial court's finding that it lacked jurisdiction over the petition is hereby reversed.

### B.     Alternative Grounds for Dismissal

The trial court's order of dismissal granted the Med's motion to dismiss "[f]or all of the reasons set forth in the transcript of th[e] Court's oral ruling," which was attached to the order of dismissal and incorporated by reference.  The trial judge announced at the beginning of its oral ruling that it had "a lot of problems with this litigation."  After noting that the court was "just not satisfied that it has the jurisdiction to hear this matter," the court went on to discuss several other issues that were specifically argued in the Med's motion to dismiss, and some that were not.  The court said, "And I'm not sure of the legal basis upon which Duckworth is seeking relief, as [counsel for Duckworth] indicated that this is not a low bid complaint, and that not all the necessary parties are before the Court."  The court also stated that the Med's request for proposals was merely an invitation to make an offer, and the court was "not satisfied that there exists authority that would require The Med to adhere strictly" to the request for proposal.  The court stated, "as [counsel for the Med] indicated, usually there will be some kind of statutory authority that would exist that a party can rely upon for purposes of determining whether the procedure that was followed was proper according to

---

[10] Although the cases that we have discussed involved permitting an improperly filed petition for declaratory judgment to be treated as a petition for writ of certiorari, and conversely, an improperly filed petition for writ of certiorari to be treated as a petition for declaratory judgment, in the context of land use planning cases, we can discern no reason for prohibiting a trial court from taking similar action in other types of cases.  The Supreme Court has stated repeatedly that, when appropriate, "the courts should give effect to the substance of a pleading rather than its form."  **Brundage**, 357 S.W.3d at 371 (citing *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 104 (Tenn. 2010); *Bemis Co. v. Hines*, 585 S.W.2d 574, 576 (Tenn. 1979)).

the legal rules and procedures established. But there has been no statute identified that the Court can rely on to conclude that what the Regional Medical Center did or didn't do violated some constitutional or procedural right of Duckworth." The court added, "there has been no satisfactory proof suggested that can be shown that the process that The Med used was unfair." In addition, the court stated that in the absence of a contract between the Med and Duckworth, "the Court has a problem with seeing that Duckworth has a cause of action for which relief can be granted." Finally, the court found that a previous decision of the Court of Appeals had held that the Med is not a governmental entity. Thus, the trial judge concluded by stating that the motion to dismiss was granted "for all those reasons."

On appeal, Duckworth raised only two issues: whether the trial court erred in holding that the Med is not a governmental entity; and whether Duckworth had standing to sue the Med for failure to adhere to the requirements of its request for proposals and failure to complete the process in a fair and principled manner. We agree with the Med's contention that the trial court's order of dismissal encompassed several other independent grounds for dismissing Duckworth's complaint, which had been specifically argued in the Med's motions to dismiss as alternative grounds for dismissal, including, failure to join an indispensable party (as the trial judge stated, "not all the necessary parties are before the Court"); and failure to identify the statute allegedly violated by the Med as required by Tennessee Rule of Civil Procedure 8.05 (as the trial judge stated, "as [counsel for the Med] indicated, usually there will be some kind of statutory authority that would exist that a party can rely upon for purposes of determining whether the procedure that was followed was proper according to the legal rules and procedures established. But there has been no statute identified that the Court can rely on to conclude that what the Regional Medical Center did or didn't do violated some constitutional or procedural right of Duckworth.") In its brief on appeal, Duckworth failed to mention these alternative rulings, let alone seek their reversal. The Med pointed out this omission in its brief on appeal, arguing that it was unnecessary for this Court to consider whether the Med is a governmental entity and whether Duckworth had standing to pursue its claim due to the fact that the trial court made alternative rulings that formed the basis for its dismissal, and Duckworth failed to appeal those rulings. In its reply brief, Duckworth argued that if the trial court did dismiss its petition based upon these alternative grounds, then the court erred in doing so, for various reasons. However, we will not consider Duckworth's belated attempt to challenge the propriety of the trial court's alternative rulings. *See **Regions Financial Corp. v. Marsh USA, Inc.***, 310 S.W.3d 382, 392 (Tenn. Ct. App. 2009) ("it is not the office of a reply brief to raise issues on appeal"); ***Castle v. State, Dep't of Corr.***, No. E2005-00874-COA-R3-CV, 2005 WL 2372762, at *4 (Tenn. Ct. App. Sept. 27, 2005) ("We will not consider an issue raised for the first time in a reply brief as an issue that has been raised properly on appeal.") "A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues." ***Owens v. Owens***, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) (citing Tenn. R. App. P. 27(c); *Denver Area Meat Cutters & Employers Pension*

*Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006)). "A reply brief is limited in scope to a rebuttal of the argument advanced in the appellee's brief." ***Clayton***, 209 S.W.3d at 594. It would be fundamentally unfair to permit an appellant to advance new arguments in the reply brief, as the appellee may not respond to a reply brief. ***Id.***

Because Duckworth failed to appeal all of the alternative grounds for dismissal in the trial court's order, the Med's argument that we need not consider the two issues Duckworth presented on appeal is well-taken.

## IV.   CONCLUSION

We find that the petition was not subject to dismissal for lack of subject matter jurisdiction, and we reverse the trial court's finding to the contrary. However, due to the petitioner's failure to appeal the trial court's alternative grounds for dismissal, we find it unnecessary to consider the issues raised on appeal, and we otherwise affirm the order of dismissal. For the aforementioned reasons, the decision of the chancery court is hereby affirmed in part and reversed in part. Costs of this appeal are taxed to the appellant, Duckworth Pathology Group, Inc., and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.